744 A.2d 1213 (2000)
328 N.J. Super. 106
STATE of New Jersey, Plaintiff-Respondent,
v.
Arthur BYARD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 2000.
Decided February 3, 2000.
*1214 Ivelisse Torres, Public Defender, for defendant-appellant (Paul M. Klein, Deputy Public Defender, of counsel and on the brief).
Ronald S. Fava, Passaic County Prosecutor, for plaintiff-respondent (Marc A. *1215 Festa, Assistant Prosecutor, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and ARNOLD.
The opinion of the court was delivered by ARNOLD, J.S.C. (temporarily assigned).
Defendant Arthur Byard appeals from his convictions following a jury trial of second-degree aggravated arson committed on September 15, 1995 at Nanny's Grocery Store (Nanny's) in Paterson, disorderly persons criminal mischief at Nanny's on September 5, 1995, and fourth-degree retaliation against a witness between September 5, 1995 and September 15, 1995. He was sentenced as a persistent offender to a term of twenty years with a ten-year period of parole ineligibility on the arson conviction and to concurrent terms of eighteen months with nine months parole ineligibility for the fourth-degree offense of retaliation and six months for criminal mischief. These concurrent terms were imposed consecutively to the sentence on the arson conviction.
Defendant raises the following points on appeal:
POINT I
IN VIOLATION OF N.J.R.E. 404(b) AND 403, THE TRIAL COURT ALLOWED THE STATE TO INTRODUCE, IN AN ARSON PROSECUTION, EVIDENCE OF AN ARSON FOR WHICH DEFENDANT WAS NEVER CHARGED, AND THE COURT ERRED BY GIVING AN INADEQUATE LIMITING INSTRUCTION REGARDING THIS PURPORTED OTHER-CRIME EVIDENCE. (Partially raised below)
POINT II
THE PROSECUTOR IMPROPERLY USED HIS OPENING COMMENTS TO TESTIFY ABOUT OTHER-CRIME EVIDENCE WHICH WAS NEVER SUBSTANTIATED AT TRIAL. (Not raised below)
POINT III
DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE.
This case arises from events occurring over a period of ten days in September 1995. The following evidence was presented to the jury regarding those events.
At the time of the alleged incidents Jose Munoz (Munoz) owned and operated Nanny's Grocery Store located at 54 North 3rd Street in Paterson. Munoz testified that he knew defendant. On September 5, 1995, Munoz's car was parked on the street directly in front of Nanny's. From inside the store, Munoz saw defendant on the roof of his car while four other men were playing cards on its hood. Munoz approached the men and asked them to move away from his car. At that time, Munoz noticed the roof of the car had been dented. As he was returning to the store Munoz heard one of the men say "f..k him." Munoz then called the police.
After he called the police, Munoz saw defendant throwing glass bottles at his car, one of which broke the windshield. As a result, Munoz called the police again. Almost thirty minutes later the police arrived on the scene and defendant ran away.
Later that day, after the police had left, defendant returned to Nanny's. Defendant yelled, "m ....r f ....r, you calling the police on me, you trying to get me locked up", and began throwing glass bottles into the store toward Munoz. In addition, defendant yelled to Munoz, "I'm going to kill you, m .... r f ....r." After throwing the bottles, defendant approached the store clerk behind the counter, Ruben Acevedo, punched him in the face and began turning over candy and cake racks.
The police were again called. When the police returned to Nanny's, they saw defendant crossing the street. The police pulled the police car alongside defendant *1216 and attempted to engage him in conversation but he continued walking away. When the police stopped their car, defendant ran. The police gave chase but were unable to catch up with defendant.
The police returned to Nanny's and questioned both Munoz and Ruben Acevedo. The officers told Munoz to go to the Paterson Police Department to file a complaint against the defendant. The following day, September 6, 1995, at the police department, Munoz was directed to the Paterson Municipal Court where he signed a malicious damage complaint against defendant.
Teresa Whitfield (Whitfield) testified about the events surrounding a fire at the M & B Grocery Store on September 11, 1995. She testified that in the early morning hours of September 11, 1995, defendant was smoking bluntscigars filled with marijuana and laced with cocaine with her and another woman identified only as "Chickie."[1] Whitfield was a long-time drug addict who claims to have known defendant from grammar school and from the Christopher Columbus Projects (CCP) where they both resided at the time. According to Whitfield's testimony, the three were smoking the blunts near the M & B Grocery Store located at One Circle Avenue in Patterson about one block from Nanny's.
Whitfield testified that defendant complained to the two women about being harassed by the grocery store owner who called the police on him. Defendant complained about losing his drug stash as a result of the incident and expressed his desire to "get the m ....r f ....r," and that he wanted to "torch the place." Although at the time defendant did not indicate which place he wanted to torch, Whitfield offered to do it for $75.
According to Whitfield, defendant urged her to use gasoline but she refused, instead retrieving alcohol from an acquaintance living in the CCP. Whitfield testified that she then proceeded to the M & B Grocery Store, splashed the alcohol on the side of the building and lit it with a match. Upon returning to CCP, Whitfield was confronted by defendant who said "it was the wrong f. ....g store." Defendant then demanded that Whitfield return to burn the "right store." She refused.
The fire at the M & B Grocery Store was reported to the Paterson Fire Department (PFD) at 2:50 a.m. September 11, 1995. The fire was located on a wooden porch at the back of the building which housed the M & B Grocery Store and two apartments above it. The PFD extinguished the fire and, suspecting foul play, called for a fire investigator. Paterson Fire Investigator, Andrew Morabito, and Passaic County Criminal Investigator, Joseph Phillips, were called to the scene. Investigator Morabito detected an odor of gasoline and discovered a burned plastic container, also smelling of gas, with a "shirt" melted into it. Based upon his investigation, Morabito determined the fire was started by a "Molotov cocktail", a container containing a flammable liquid with a wick stuffed into the opening. The wick is lit before the container is thrown.
Defendant was charged with the following crimes as a result of the September 11, 1995 fire at the M & B Grocery Store: first-degree arson for hire at Nanny's; second-degree attempted aggravated arson at Nanny's; and second-degree aggravated arson at the M & B Grocery Store. He was found not guilty of those charges.
On September 13, 1995, there was another fire, this time at Nanny's. Defendant contends that the trial court erred in admitting evidence of this fire because he was not charged in connection with this fire. The evidence which was admitted was as follows. At 1:09 a.m. on September 13, 1995, the PFD was dispatched to a fire at Nanny's. Although no fire was visible when the fire department arrived, there *1217 was smoke coming from the flat roof of the one story building. A small fire was extinguished by the PFD. A cursory investigation was conducted that night and the PFD determined the fire to be merely rubbish burning on the roof. The Chief on the scene did not feel the need to call in an arson investigator.
On September 15, 1995, there was a third fire. Again, the fire was at Nanny's. Investigators Morabito and Phillips were again called to the scene. The fire had occurred in an alcove leading to the rear basement door of the building in which Nanny's is located. In the area of the fire the smell of gasoline was detected. A melted plastic container, smelling of gasoline, was found in the burned debris near the basement door. In the alcove surrounding the basement door there was an opening in a brick wall. The small enclosed area inside this opening also smelled of gasoline and a second plastic container containing a liquid was found there. In addition, a plastic bag and a small piece of cloth were found in the alleyway leading to the rear of the store. The bag, cloth and the liquid in the second plastic container tested positive for gasoline. Investigator Phillips testified that, in his expert opinion, the fire in the rear of Nanny's was similar to the fire at M & B Grocery Store as both were intentionally set with gasoline carried in plastic containers and small pieces of cloth were found at both scenes.
While investigating the fire at Nanny's on September 15, 1995, both investigators decided to further investigate the fire which had occurred on the roof of Nanny's on September 13, 1995. Upon closer inspection, an irregular burn pattern was discovered on the roof in the area where the September 13, 1995 fire occurred. Investigator Phillips testified that this indicated that the fire was caused by a flammable liquid being tossed onto the roof. This expert opinion was bolstered by the fact that there was "streaking" on the side of the building indicating that a flammable liquid had been thrown onto the roof and, while ignited, had run down the side of the building. Despite Phillips opinion that the fire on September 13, 1995, was started by a Molotov cocktail, unlike the other two fires, no evidence, such as plastic jugs or cloth, was found.
Based upon these facts, defendant was indicted on the first and third fires, but not on the September 13, 1995 fire. Prior to the commencement of trial, the State indicated its intention to introduce evidence of the fire on September 13, 1995. Pursuant to N.J.R.E. 104(a), the trial court held a hearing out of the presence of the jury to determine the admissibility of such evidence, reserving her decision until further trial testimony was presented. Later, after hearing arguments from counsel, the trial court ruled that evidence of the September 13, 1995 fire was admissible pursuant to N.J.R.E. 404(b) under the test set forth in State v. Cofield, 127 N.J. 328, 605 A.2d 230 (1992). Defendant was convicted of second-degree aggravated arson at Nanny's on September 15, 1995, along with a disorderly persons offense of criminal mischief and of retaliation.
Defendant contends that his convictions should be reversed because the trial court erred in admitting evidence of the September 13, 1995 fire at Nanny's. He argues that such evidence was not admissible under N.J.R.E. 404(b) because it was impermissible "other crimes" evidence. We disagree and conclude that the evidence was not "other crimes" evidence subject to the Cofield test because it related to the crimes for which defendant was then standing trial and served to paint a complete picture of the events which occurred between September 5, 1995 and September 15, 1995. State v. Martini, 131 N.J. 176, 242, 619 A.2d 1208 (1993) (citing United States v. Masters, 622 F.2d 83, 86 (4th Cir.1980)). Indeed, evidence relating to the September 13, 1995 fire was not evidence of past wrongdoing. Obviously, the September 13, 1995 fire occurred after the incident of September 5, 1995. It occurred *1218 after defendant's threats, as testified to by Muñoz and Whitfield, and after the fire started by Whitfield at the "wrong store" on September 11, 1995. The September 13, 1995 fire occurred after defendant's demand that Whitfield burn the "right store" and before the fire of September 15, 1995. Evidence of the September 13, 1995 fire is similar to that evidence found not to be "other crimes" evidence in State v. Cherry, 289 N.J.Super. 503, 674 A.2d 589 (App.Div.1995). In Cherry, we held that evidence that prior to a police officer's murder outside a bar, defendant and two other men planned to rob that bar was admissible as within the res gestae of the murder. Similarly, in State v. Ortiz, 253 N.J.Super. 239, 601 A.2d 735 (App. Div.), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992), we held that evidence of an uncharged narcotics offense witnessed by officers who arrested defendant was held to be admissible as part of the res gestae.
Defendant also contends "that the prosecutor improperly used his opening statement to testify about other crimes evidence which was never substantiated at trial." This issue was not raised below. Specifically, the defendant objects to the following portion of the prosecutor's opening statement.
The person who operates Nanny's grocery store, Jose Muñoz, will testify that he knows the defendant. He knows him because the defendant hangs out there in front of the store all the time. And that he's had problems with defendant in the past in which he has had to call the police.
We find no merit whatsoever in defendant's contention. We find that taken in context, the prosecutor was obviously referring to the September 5, 1995 incident involving the defendant.
Defendant also contends that his sentence is manifestly excessive. The trial court, after determining that the defendant was extended-term eligible as a persistent offender pursuant to N.J.S.A. 2C:43-6c, imposed the maximum possible penalty on the second-degree arson conviction: a term of twenty years with a ten-year period of parole ineligibility. The trial court also sentenced defendant to concurrent terms of eighteen months with nine months to be served before parole eligibility for the fourth-degree offense of retaliation against Muñoz, and six months for criminal mischief for damaging Muñoz' car and a candy rack in his store, these concurrent terms to run consecutively to the sentence for arson. Thus, the aggregate sentence was twenty-one and one-half years with a ten year and nine month period of parole ineligibility. Defendant contends that although he was eligible for an extended sentence, its consecutive aspects was excessive and in violation of the Code of Criminal Justice.
First, defendant argues that the trial court erred in imposing the maximum possible extended sentence for the second-degree arson conviction. Defendant contends that the trial court "did not specifically state that it found the aggravating factors substantially outweighed the mitigating factors." The trial court found four aggravating factors: (1) the nature and circumstances of the crime; (2) the risk that defendant will commit another offense; (3) the need to deter the defendant; and (4) the defendant's prior convictions. The trial judge stated that she found "absolutely no mitigating factors" and that the "aggravating factors are extremely strong and that there are no mitigating factors." We are satisfied that by stating that "the aggravating factors are extremely strong and there are no mitigating factors" the trial court found that the aggravating factors substantially outweighed the mitigating factors.
Defendant also argues that under State v. Dunbar, 108 N.J. 80, 527 A.2d 1346 (1987), his prior criminal record alone could not be used to determine the extent of the extended base term. However, the sentencing judge also considered other aspects of defendant's record which were not among the minimal conditions for imposing *1219 persistent offender status, such as defendant's juvenile record, parole and probation records and overall response to prior attempts at rehabilitation. The court described in detail defendant's extensive juvenile record including defendant's inability to comply or refusal to comply with probation and the ineffectiveness of rehabilitative programs and even incarceration in a juvenile facility.
Defendant also contends that the trial court should not have relied on the nature and circumstances of the offense as an aggravating factor. We conclude that because the arson was committed in retaliation for Muñoz complaining to the police and signing a complaint, there was sufficient evidence in the record to support the trial court's finding that the nature and circumstances of the offense was an aggravating factor.
Finally, we reject defendant's contention that the trial court failed to specifically place on the record the aggravating factors which caused it to impose a period of parole ineligibility. A review of the record reveals that when making its parole ineligibility determinations, the trial court referred back to its previous analysis regarding weighing the aggravating and mitigating factors. We find no error in the trial court's decision that the concurrent criminal mischief and retaliation sentences be served consecutively with the arson sentence. The trial court properly concluded that the retaliation conviction involved a separate threat of violence. It was committed at a time distinct from the other. The trial court properly weighed the factors set forth in State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985) and did not err by requiring the concurrent sentences imposed on the convictions of retaliation and criminal mischief to be served consecutively with the sentence imposed on the arson conviction.
Affirmed.
NOTES
[1] At the time of trial, Ms. Whitfield was suffering from AIDS and Tuberculosis. As a result, her testimony was videotaped and then later showed to the jury.