809 A.2d 804 (2002)
355 N.J. Super. 109
STATE of New Jersey, Plaintiff-Respondent,
v.
Frank PIERRO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 29, 2002.
Decided November 15, 2002.
*806 Frank Pierro, appellant pro se.
David Samson, Attorney General, attorney for respondent (Arthur S. Safir, Deputy Attorney General, of counsel and on the brief).
Before Judges COBURN, COLLESTER and ALLEY.
*805 The opinion of the court was delivered by COBURN, J.A.D.
This case arose from two Wayne Township residential burglaries, each accompanied by theft. The homes were three blocks apart, the time and method of illegal entry was the same, and the second incident occurred four days after the first. No one observed the first incident, and defendant's connection to it was established by evidence discovered during the second incident: the police, called while the second burglary was in progress, chased defendant and found hidden under his body items stolen in the first burglary.
A Passaic County grand jury returned an indictment charging defendant in four counts; the first two counts covered the first incident, while the latter counts covered the second incident. Counts one and three alleged third-degree burglary, N.J.S.A. 2C:18-2. Count two alleged third-degree theft of movable property, N.J.S.A. 2C:20-3 and N.J.S.A. 2C:20-2(b)(2)(a), and count four alleged fourth-degree theft of movable property, N.J.S.A. 2C:20-3 and N.J.S.A. 2C:20-2(b)(3). Before trial, defendant moved for a severance, contending that the two incidents should be tried separately. The judge denied the motion, and a jury found defendant guilty on all counts. After granting the State's request for an extended term because defendant is a persistent offender, N.J.S.A. 2C:44-3a, the judge imposed the following consecutive prison sentences: ten years, with five years of parole ineligibility, on count three; and five years, with two and one-half years of parole ineligibility, on count one. The judge imposed concurrent sentences on the remaining counts: five years on count two, and eighteen months on count four. Thus, the aggregate sentence was fifteen years of imprisonment, with seven and one-half years of parole ineligibility.
The primary issue on appeal is whether the judge erred in denying the defendant's severance motion. Since all the evidence from both incidents would have been admissible in separate trials, and since defendant failed in his pretrial motions to demonstrate that he had important testimony to give as to one incident and a strong need to refrain from testifying as to the other, we sustain the ruling as well within the judge's discretion. Because we also reject the other points raised by defendant, we affirm the judgment.

I
Scott Ressler's home was burglarized on the evening of July 23, 1999. The first *807 floor bathroom window had been broken, and a rock and glass lay on the floor. Among the missing items were over $5,000 worth of jewelry and Ressler's social security card, two credit cards, boating safety certificate, and library card.
Four days later, on the evening of July 27, 1999, the home of Eswar and Jyotsna Phadia was burglarized while they were sleeping. They lived three blocks from Ressler. A neighbor heard glass breaking, saw someone on the Phadia's back porch, and summoned the police, who arrived within minutes. Two officers, Worell and McDermott, positioned themselves at opposite corners of the home. Worell heard a voice from inside the house. A window opened on the side of the house, and a man leaped out and began running toward McDermott, who, with the aid of a flashlight, was able to see the man's face. As the man ran away, the police gave chase, but were unable to keep up. The man ran past another neighbor, Anthony Giampapa. The area was well lit, and Giampapa got a good look at the man's face. The police called the Sheriff's K-9 unit, which arrived about twenty minutes later. Within about ten minutes, one of the K-9 dogs located defendant, who was sweating profusely and hiding in a fetal position under a nearby bush. Giampapa was brought to the scene, where he positively identified defendant as the man who had just run past him. Later that evening at police headquarters, McDermott, who had been hurt in the chase, positively identified defendant as the man who had run toward him after jumping out of the Phadia's window. Entry into the Phadia's home had been achieved by breaking the first floor bathroom window with a rock, which was found on the floor. Money was stolen, $350 from Jyotsna's pocketbook, and $2,000 in new $100 bills from an envelope in an upstairs dresser. When the police arrested defendant, they found $2,354 in his wallet, $2,000 of which, separated from the other currency, was in new $100 bills. Under his body they found a Social Security card, two credit cards, a boating safety certificate, and a library cardall in the name of Scott Ressler.
Defendant testified as follows. He was not in Wayne on July 23, 1999; however, on the next day, while he and a friend were walking through a nearby strip mall, he found Ressler's identification documents on the ground in a plastic bag. He put them in his wallet, planning to use them as false identification for himself. On July 27, 1999, he left his girlfriend's home in Wayne around 11:00 p.m. As he walked toward the bus stop, he saw a police car moving slowing and scanning the area with a spotlight. He had some marijuana in his sock and Ressler's identification papers in his wallet, along with $2,000 in new $100 bills. He also had $396 in his pocket. His explanation for the money was that he did not have a bank account and liked to carry large sums of money. He had earned the money gambling and working. He said that the $396 was his spending money, and the $2,000 was his savings, the new bills resulting from an exchange at a bank of old money in small denominations for the new $100 bills. When he realized that the police were searching for someone, he became concerned that he would be stopped and found in possession of the marijuana and the Ressler documents. He discarded the marijuana, ran, and hid under a bush, placing the Ressler documents under his body in the hope the police would not find them. Shortly thereafter he was arrested, and the Ressler documents were picked up by the police.

II
The severance issue first arose at a pretrial hearing on March 13, 2000, at which *808 time defendant was represented by counsel assigned by the Public Defender. However, before discussing severance, defendant moved successfully for permission to represent himself, and the judge, with defendant's consent, appointed his assigned counsel to assist him throughout the proceedings. Those rulings are not questioned on appeal. Defendant's counsel then moved for severance on the ground that the incidents were separate. The prosecutor resisted, arguing that the evidence from each date would be admissible in separate trials. At that time, the arguments focused on whether the evidence from the second burglary would be admissible under N.J.R.E. 404(b) with respect to identifying defendant as the person who committed the first burglary. In a March 23, 2000, written opinion, the motion judge, who was not the trial judge, ruled as follows:
Evidence of defendant's possession of the credit cards on July 27, 1999, after allegedly fleeing after committing the burglary and theft is admissible to show he was the person who committed the July 23, 1000 burglary and theft. It is admissible pursuant to [N.J.R.E.] 404(b) to show identity. See State v. Loftin, 146 N.J. 295, 321, 394, 680 A.2d 677 (1996). Since it would be admissible in a trial involving both incidents, there is no additional prejudice to defendant because it would be admissible in the trial of the July 23, 1999 incident. State v. Pitts, 116 N.J. 580, 601, 602, 562 A.2d 1320 (1989). See also R. 3:7-6.
On January 12, 2001, at a hearing focused on discovery and defendant's motion to recuse the trial judge, the new assistant prosecutor assigned to the case raised the subject of severance. He indicated that he disagreed with the State's former position that joinder was proper under N.J.R.E. 404(b) with respect to proving identity. Instead, relying on State v. Byard, 328 N.J.Super. 106, 744 A.2d 1213 (App.Div.2000), he argued that the evidence from both incidents was admissible under the concept of res gestae because defendant was found in possession of the proceeds from the first burglary when he was arrested committing the second burglary. The trial judge did not rule on the validity of the res gestae theory at that time.
On February 9, 2001, defendant personally renewed his motion for severance, this time on the ground that he had important testimony to give concerning the second incident and a strong need to refrain from testifying as to the first. He did not indicate the nature of the testimony he proposed to give on the second incident. However, since he testified at trial, we now know what it is, as well as what he had to say about the first incident, which was simply that he was not in Wayne on that night. He argued that if the first incident were tried separately, he would not testify because the evidence against him was weak. Although he said he did not want to be subjected to cross-examination in that case, he did not give as a reason that his criminal record would then come before the jury. Rather, his argument was based on the assumption that the circumstances of the second incident, where the evidence of his guilt was strong, would not come before a jury by way of cross-examination in a trial limited to the first incident. The trial judge denied defendant's motion.
Joinder of criminal charges is governed by R. 3:7-6:
Two or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common *809 scheme or plan. Relief from prejudicial joinder shall be afforded as provided by R. 3:15-2.
[Emphasis added.]
In this case the offenses arising from each incident are the same (burglary and theft of movable property). Moreover, it was defendant himself who connected the incidents since he carried the items stolen in the first incident to the second, and during that incident attempted to dispose of them in violation of N.J.S.A. 2C:29-3b(1) (hindering one's own prosecution by concealing evidence). Thus, joinder was clearly appropriate. Cf. State v. Pillot, 115 N.J. 558, 567-68, 560 A.2d 634 (1989) (involving six robberies at different locations during a nine-week period). Of course, offenses that may be joined under R. 3:7-6 may also be severed pursuant to R. 3:15-2 to avoid undue prejudice. However, neither rule articulates the concept of prejudice. For that, we must turn to the cases.
In State v. Chenique-Puey, 145 N.J. 334, 341, 678 A.2d 694 (1996), the Court noted that a primary consideration in determining whether joinder would result in prejudice is whether, in separate trials, evidence of the severed offense would be admissible under N.J.R.E. 404(b) in the case tried. The Court held that "[i]f the evidence would be admissible at both trials, then the trial court may consolidate the charges because `a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" Ibid. (citation omitted).
In a trial of the first incident, the State would be entitled to prove, along with the occurrence of the burglary and theft, that defendant was found in possession of a portion of the stolen goods, namely the identification cards. Proof of possession would be justified in these circumstances because "the unexplained and exclusive possession of stolen property shortly after the theft justifies an inference that the possessor is the thief." State v. Dancyger, 29 N.J. 76, 85, 148 A.2d 155, cert. denied, 360 U.S. 903, 79 S.Ct. 1286, 3 L. Ed.2d 1255 (1959). Furthermore, the entire circumstances under which defendant was found in possession of the documents would be admissible unless some aspect of those circumstances was particularly prejudicial. As we observed in State v. Cherry, 289 N.J.Super. 503, 674 A.2d 589 (App.Div.1995), "[E]vidence of events that take place during the same time frame as the crime charged in the indictment will not be excluded if the evidence establishes the context of the criminal event, explains the nature of, or presents the full picture of the crime to the jury." Id. at 522, 674 A.2d 589. Accord, State v. Martini, 131 N.J. 176, 242, 619 A.2d 1208 (1993). In Robertson v. Hackensack Trust Co., 1 N.J. 304, 63 A.2d 515 (1949), Justice Case eloquently described the theory for admitting the full picture:
[T]he admissibility of the proofs as res gestae has as its justifying principle that truth, like the Master's robe, is of one piece, without seam, woven from the top throughout, that each fact has its inseparable attributes and its kindred facts materially affecting its character, and the reproduction of a scene with its multiple incidents, each created naturally and without artificiality and not too distant in point of time, will by very quality and texture tend to disclose the truth.
[Id. at 312, 63 A.2d 515.]
Those principles would have fully warranted admission of the second incident evidence in a trial of the first incident. It was, after all, defendant who placed the two incidents in the same time frame by trying to get rid of the evidence from the first incident just prior to his arrest on *810 the second. The full picture of the first crime could not have been shown to the jury without also showing the second crime, defendant's arrest, and his attempt to prevent his prosecution for the first crime by secreting the evidence of it still in his possession. Nor was there anything particularly egregious or shocking in the second incident that would have justified limiting the State to less than a full presentation. Compare State v. Hardaway, 269 N.J.Super. 627, 630-31, 636 A.2d 128 (App.Div.1994), where we held that the State was entitled to prove defendant's presence at the killing by showing his subsequent robbery of others with the same gun used in the killing, provided that the testimony came from the arresting officer, who stopped the robbery in progress, and not from the robbery victims because they described their terror in detail.
In a trial of the second incident, it might seem that the evidence of the stolen identification cards would have been irrelevant and prejudicial because they did not prove any element of the second set of offenses. However, a jury could believe that defendant had two distinct motives for attempting to hide that evidence: not only to separate himself from the first burglary, but also to decrease the likelihood of an arrest for the second burglary based on suspicions raised by his possession of another's identification, particularly someone whose nearby home was burglarized recently, a fact which the police might well know. Furthermore, it was defendant himself who made those documents relevant because he intended to, and did in fact, testify that one of the reasons he ran and hid was out of fear of being found with the documents in his possession. Moreover, he wanted to, and did, testify that he found the documents on the ground the day after the first incident. He also wanted to explain that he kept those documents simply to use them as false identification. Surely, the State would be entitled to counter those explanations with the evidence showing the first burglary as proof that defendant was lying about how he came into possession of the documents. In short, the jury was entitled to the whole picture without artifice that placed defendant in a better light than he deserved.
Defendant also claimed before trial that he was entitled to severance because he had important testimony to give about the second incident and a strong need to refrain from testifying about the first incident. For the first time, he now argues that the prejudice he suffered was the exposure of his criminal record as to the first incident.
The only New Jersey case touching this subject is State v. Reldan, 167 N.J.Super. 595, 401 A.2d 563 (Law Div.1979), rev'd on other grounds, 185 N.J.Super. 494, 449 A.2d 1317 (App.Div.), certif. denied, 91 N.J. 543, 453 A.2d 862 (1982). In dictum, the trial court observed, "[I]t is potentially prejudicial to put a defendant in a position where, if he chooses to testify as to one charge, he opens himself to cross-examination or, alternatively, to the possibly damaging effect of remaining silent as to another charge." Id. at 599, 401 A.2d 563 (citation omitted). However, the court added that even if a defendant took that stance, "that fact alone is not dispositive of a motion to sever so as to divest a court of all control over the matter." Ibid. (citations omitted). Finally, the court found the governing principle to be this: "`[N]o need for a severance exists [on this ground] until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other.'" Id. at 599-600, *811 401 A.2d 563 (quoting Baker v. United States, 401 F.2d 958, 977 (D.C.Cir.1968), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970)).
The Baker court explained the nature of the required showing in this way:
In making such a showing, it is essential that the defendant present enough informationregarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the otherto satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.
[401 F.2d at 977 (footnote omitted).]
As previously noted, defendant's motion for severance did not include any indication of the nature of his proposed testimony on the second incident. In explaining why he wanted to refrain from testifying in a separate trial on the first incident, he said that the evidence was weak and he did not want to be subjected to cross-examination. But, he did not state that what he feared was exposure of his criminal record; rather, he based his argument on the incorrect assumption that in such a trial the second-incident evidence would not come before the jury. Since that evidence would have come before the jury, defendant would have had, so far as we can tell, the same need to testify about how he came into possession of the first victim's identification papers as he would have had in a trial limited to the second incident. Therefore, he would still be faced with cross-examination on his prior criminal record.
A trial court is "accorded ample discretion in determining whether to grant relief from joinder of offenses because of the potential for prejudice." State v. Pitts, 116 N.J. 580, 601, 562 A.2d 1320 (1989) (citations omitted). Reversal is only appropriate where there has been an abuse of discretion. State v. Chenique-Puey, supra, 145 N.J. at 341, 678 A.2d 694. Given the erroneous assumption underlying defendant's severance request, and his failure to argue that he wanted to avoid testifying on the first incident to keep his criminal record from the jury, we are satisfied that the trial court's determination was well within the ample discretion afforded on this issue.[1] Moreover, when joinder is otherwise justified, no case has held that severance must be granted solely because defendant claims that he would not testify in the weaker case to avoid exposure of his criminal record. At a minimum, defendant must show that testifying on the merits of both offenses in one trial would itself cause prejudice. See Cross v. United States, 335 F.2d 987, 990 (D.C.Cir. 1964).
*812 Defendant's other points[2] are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] In its appellate brief, the State argues, alternatively, that these were either "signature" crimes, and subject to joinder on that basis, or that joinder was proper because possession of the stolen identification papers was admissible with respect to the second incident to prove intent. However, the State did not rely at trial on the theory of "signature" crimes, see, e.g., State v. Fortin, 162 N.J. 517, 529-32, 745 A.2d 509 (2000), and we are satisfied that the incidents were insufficiently unique to justify application of that concept. Apart from the fact that the "intent" theory was never advanced at trial, it cannot be applied here. Evidence of another crime may only be offered to prove a material issue that is genuinely "disputed." Id. at 529, 745 A.2d 509. Defendant's intent was not disputed at all with respect to the second incident; he claimed he was not present at the crime scene, and he did not suggest that the burglar had any intent other than to steal.
[2] He argues: (1) there was insufficient evidence presented to the grand jury on the first incident; (2) the judge erred in his charge on the inference permitted from recent possession of stolen property; (3) the verdict on the first incident was against the weight of the evidence; (4) the late, but nonetheless pretrial, turnover of evidence he sought with respect to the tracking dogs prejudiced his right to a fair trial; and (5) the trial judge erred in refusing to recuse himself.