**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0341-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN A. WELLS, a/k/a
JOHNIE WELLS, JOHN
ARTHUR WELLS, JR.,
SAFAR A. MUHAMMAD,
JOHNNIE S. SHABAZZ, and
JOHNNY SHABAZZ,

     Defendant-Appellant.

_____

> Submitted January 6, 2021 – Decided February 19, 2021
>
> Before Judges Sumners and Geiger.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-10-1275.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Daniel Finkelstein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant John A. Wells appeals from his July 10, 2018 conviction and extended sentence as a persistent offender. We affirm.

We derive the following facts from the record. Defendant was implicated in two similar robberies of female victims, one successful and one not, that occurred two days apart in the parking lots of two different supermarkets located in adjoining municipalities. In each incident, the perpetrator would drive alongside a woman pushing a shopping cart and grab the woman's purse before driving away.

The first occurred on October 26, 2014, in the parking lot of a Stop & Shop in South Brunswick. The victim, Debra Dennuzzo, left the store while pushing a shopping cart, carrying a small black purse on her right arm that contained her cell phone, glasses, makeup, $120 in cash, and credit cards. As she walked towards her car, she "noticed a car behind [her]," and "the next thing [she knew], the pocketbook is going down [her] arm . . . and there was a male in the car that had the other end." Dennuzzo released the bag and the car drove off. The brief struggle broke her middle fingernail.

Dennuzzo immediately ran back to the grocery store to call the police. South Brunswick Police Officer William Bonura, Jr., arrived quickly and interviewed Dennuzzo. Afterwards, Bonura approached the store's security supervisor and requested the security footage. Bonura reviewed it, concluding the car in question was an early 2000's Saab, based on the car's distinct features. Bonura received a phone call later that day from a nearby resident who found a wallet near his house that matched Dennuzzo's description. It contained only her credit cards. Dennuzzo described the robber as a black male wearing sunglasses, who drove a dark-colored car of a make and model that she did not recognize.

The second incident occurred two days later in a parking lot of a ShopRite in North Brunswick. Kim Klose left the store, pushing a shopping cart back to her car, when a car approached her, and the driver grabbed the pocketbook hanging from her shoulder. She snatched it back and managed to hold onto it before the car drove off. Klose memorized the car's license plate number and wrote it down on a piece of paper. She described the driver as "a black man in his late 40s, early 50s" in an older, black car.

Klose returned to the supermarket, gave an employee the plate number, and waited for police. North Brunswick Police Officer Alex Obando arrived on

3

the scene and interviewed Klose. Obando relayed the license plate number and collected video surveillance of the parking lot from the grocery store.

North Brunswick Detective Robert Powell traced the registered owner of the vehicle with that license plate number to Victoria Reynolds, defendant's wife. Powell also discovered defendant and Reynolds had been occupants in the vehicle during a motor vehicle accident, and that defendant was issued a motor vehicle summons while driving the Saab. Detectives went to Reynolds's house to further investigate.

On the same day as the second robbery, Michael Dooley, the used car manager at a local car dealership where defendant detailed cars, received a "Nixle," a police-related community messaging app text, detailing the Dennuzzo robbery. The message described the perpetrator as a black male driving a dark-colored Saab. The message caught Dooley's attention because the Stop & Shop was located in close in proximity to the dealership and he recalled an occasion where he helped defendant reenter the dealership to find his keys and leave the parking lot in a dark-colored Saab.

Dooley recalled that during their brief conversation, defendant said he

> had just received a motor vehicle summons for [an] amount of money, and his wife was very upset with him because Christmas was coming and they weren't going to have money for gifts, and he needed to find a way to

4

> pay this money back as quick as possible, and that he
> was going to do that so it didn't ruin Christmas.

Dooley noticed that defendant was driving a dark blue Saab that day, a car he characterized as "a rather rare vehicle."

Reminded of their conversation and of the uniqueness of the dark blue Saab, Dooley called his friend, South Brunswick Police Officer Brian Sites. Defendant and the Saab were at the dealership, so Dooley relayed the Saab's license plate number to Sites. Sites agreed that Dooley's interaction with defendant and the location and timing of the robbery were "way more than a coincidence" and called detectives from South Brunswick that were working the case. Defendant did not object to Sites' similar testimony regarding Dooley's interaction with defendant.

Officers from both cases proceeded to Reynolds's house and, upon learning that defendant was at work, went to arrest him. Powell arrived at the dealership and briefly talked with defendant before arresting him. He recalled that defendant was "breathing heavily" and "sweating." Defendant stated that the blue Saab out front belonged to his wife, that he drove the car that day (October 28, 2014), and that he never lends the car to anyone. When asked about the North Brunswick incident that day, defendant stated that he went to the

5

ShopRite during his break to get food and that "[he] might have bumped into some lady or something, but [he] didn't try to hurt anybody or [] take anything."

Defendant testified on his own behalf. He denied committing either robbery but admitted having shopped at the ShopRite and going to a pizza parlor in that shopping center. He denied being at the Stop & Shop on October 26, 2014. He denied telling Dooley that he needed money for Christmas, claiming he did not celebrate Christmas because he is a Muslim.

Defendant testified that after being arrested, he told the police they had the wrong car or the wrong person. Defendant admitted he had driven the Saab to work that day. He further testified that his wife, his wife's brother, and his brother also drove the Saab. Defendant denied going on lunch breaks or wearing sunglasses due to poor eyesight.

On cross-examination, defendant acknowledged that his wife owned a Saab, and identified the Saab depicted in exhibits as his wife's car. He admitted receiving a traffic summons in North Brunswick while driving it. Although he drove the Saab on October 28, 2014, he claimed that his brother borrowed it and then wife's brother picked it up later from the dealership. Defendant denied ever seeing or speaking to Dooley. He also denied answering any questions posed by Powell at the dealership.

A-0341-18

A Middlesex County grand jury returned an indictment charging defendant with two counts of second-degree robbery, N.J.S.A. 2C:15-1 (counts one and three), third-degree attempted theft by unlawful taking, N.J.S.A. 2C:5-1 and 2C:20-3(a) (count two), and third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (count four). Defendant moved to sever the trial of the two incidents, claiming that a single trial would unfairly prejudice him. The judge indicated he would conduct a Rule 104 hearing. After that judge retired, another judge denied the motion to sever without conducting a Rule 104 hearing. After analyzing the Cofield[1] factors, the judge determined both incidents could be tried together as long as the evidence was admissible under N.J.R.E. 404(b). He concluded the evidence met the exception in Rule 404(b) allowing the admission of evidence of other bad acts to prove identity.

The case proceeded to trial before a third judge. South Brunswick Officer Eric Tighelaar testified that on October 30, 2014, he interviewed Reynolds, who told him she was at a mosque on October 26, that she did not use the Saab that day, and that no one other than she and defendant drove it. Defense counsel made numerous hearsay objections to Tighelaar's testimony. The judge eventually allowed a rephrased version of Tighelaar's testimony, that

_____

[1] State v. Cofield, 127 N.J. 328 (1992).

"[Reynolds] had gotten up early in the morning, had gone to the mosque, and [] did not return until after 3:30 p.m."

On the next day of trial, the judge stated that admission of Tighelaar's testimony regarding his conversation with Reynolds was a mistake, and that she would attempt to mold a limiting instruction. Later that day, the judge read the jury its instructions but omitted any limiting instruction. Defendant did not object to the jury instructions.

During deliberations, the jury asked the court to provide "the report of the officer who wrote Mrs. Reynolds's interview." The judge declined because it was inadmissible hearsay. The jury then sent the court a note, asking to "hear specifically the officer's interview with Ms. Reynolds." The judge sent the following written instruction to the jury: "What is said by a non-party witness, specifically Ms. Reynolds, is considered inadmissible hearsay and not to be considered during your deliberations." Defendant did not object to this instruction.

The jury next asked the court to listen to the "intro" of Tighelaar's testimony and the "end portion" of the "[p]rosecutor part." The court played those segments and a juror asked "[i]s that it?" The court confirmed that was it. Defendant did not object to the playbacks or seek a further jury instruction. The

jury convicted defendant of the charges relating to the Klose attempted robbery and acquitted him of the charges relating to the Dennuzzo robbery.

The State moved to sentence defendant to a discretionary extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). The prosecutor noted that defendant had previously been sentenced to a twenty-year term with a ten-year period of parole ineligibility for a similar robbery and had been convicted of other robberies as well. Defense counsel acknowledged that defendant was eligible for a discretionary extended term but argued it should not be imposed because of the age of the prior convictions. The judge found defendant a persistent offender, noting defendant had nine prior convictions, including many robberies, and was last released from prison within ten years of the date of these offenses.

The judge observed defendant had an "extensive juvenile and criminal history" and "has failed to respond affirmatively to prior periods of probation and incarceration." She also noted that defendant "exhibited . . . a pattern of violent behavior" and imposed an extended term "to protect the public from future offenses by the defendant."

The judge found aggravating factors three (risk of re-offense), N.J.S.A. 2C:44-1(a)(3); six (prior criminal record), N.J.S.A. 2C:44-1(a)(6); and nine

(need for deterrence), N.J.S.A. 2C:44-1(a)(9). The judge found no mitigating factors and that aggravating factors substantially outweighed the nonexistent mitigating factors. On the robbery count, the judge imposed an extended fifteen-year term, subject to the parole ineligibility and mandatory parole supervision imposed by the No Early Release Act, N.J.S.A. 2C:43-7.2. The attempted theft count was merged for sentencing purposes. This appeal followed.

Defendant raises the following points for our consideration:

POINT I

THE TRIAL COURT ERRED BY FAILING TO GRANT WELLS'S MOTION TO SEVER THE TWO ROBBERIES, AS THEY WERE SEPARATE INCIDENTS BASED ON UNCONVINCING EVIDENCE.

POINT II

DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW DUE TO THE ERRONEOUS ADMISSION OF HEARSAY EVIDENCE.

POINT III

THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS DENIED WELLS A FAIR TRIAL.

POINT IV

RESENTENCING IS REQUIRED BECAUSE THE TRIAL COURT IMPERMISSIBLY DOUBLE-COUNTED AND USED THE SAME ROBBERIES AS JUSTIFICATION FOR THE PERSISTENT OFFENDER EXTENDED TERM AND AGGRAVATING FACTOR SIX.

We first address the denial of defendant's motion to sever the two robberies. A defendant may be tried for two different crimes in the same trial if the crimes "are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan." R. 3:7-6. However, trial courts may order separate trials of counts if joinder of the offenses prejudices the defendant. R. 3:15-2(b). We review a decision to grant or deny severance for abuse of discretion. State v. Davis, 390 N.J. Super. 573, 591 (App. Div. 2007).

"The test for assessing prejudice is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges.'" State v. Sterling, 215 N.J. 65, 73 (2013) (alteration in original) (quoting State v. Chenique-Puey, 145 N.J. 334, 341 (1996)). In addition, evidence of a different crime must pass the following four-factor test adopted in Cofield: (1) the evidence must be relevant to a material issue; (2) the evidence "must be similar

in kind and reasonably close in time"; (3) the evidence proffered "must be clear and convincing"; and (4) "the probative value of the evidence must not be outweighed by its apparent prejudice." Cofield, 127 N.J. at 338.

N.J.R.E. 404(b) excludes evidence of other crimes or wrongs unless it is used to show "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute."

The trial judge found that both robberies met the exception to Rule 404(b) for admission of "bad act evidence . . . for the purpose of proving identity." Defendant argues that evidence of both robberies was overly prejudicial, and a Rule 104 hearing was needed to weigh the credibility of the testimony. The State argues that severance was properly denied because evidence obtained from each robbery could be used to show defendant's identity for the other. Specifically, the State contends that defendant's admission at the dealership that he is the only person that drives the Saab could be used to prove defendant committed the Dennuzzo robbery, and that Dooley's statement about seeing defendant drive the Saab could be used to prove defendant committed the Klose robbery. It also argues that the alleged risk of unfair prejudice was disproved when the jury acquitted defendant of the Dennuzzo robbery.

A-0341-18

Generally, evidence of a crime or bad act may be used to prove identity in two situations: (1) when specific evidence derived from one offense connects multiple offenses; or (2) when the crimes are signature crimes. Sterling, 215 N.J. at 92-93. For example, joinder has been permitted where police found specific items stolen during the first burglary when they arrested defendant for the second burglary. State v. Pierro, 355 N.J. Super. 109, 117 (App. Div. 2002). Alternatively, courts have admitted signature-crime evidence to prove identity when the unique nature of the crimes is clear. State v. Fortin, 189 N.J. 579, 594 (2007). "The conduct in question must be unusual and distinctive," and "there must be proof of sufficient facts in both crimes to establish an unusual pattern." State v. Fortin, 162 N.J. 517, 530 (2000) (quoting State v. Reldan, 185 N.J. Super. 494, 502-03 (App. Div. 1982)). However, "[t]he standard for admitting other-crimes evidence to prove identity becomes more stringent when the State attempts to link a particular defendant to a crime on the basis of modus operandi, or a signature way of committing the crime." Sterling, 215 N.J. at 93.

Here, the judge allowed the State to try both crimes in one trial because she determined that either crime would be evidence used to prove defendant's identity. We discern no abuse of discretion. To be sure, the evidence for each incident included the similarities of the description of the perpetrator's car, the

identical modus operandi, the fact that both robberies occurred in supermarket parking lots, and the similarity of the victims (women pushing a shopping cart). This evidence, when coupled with the defendant's wife owning a dark blue Saab with a matching license plate that defendant had used on October 28 to go to the ShopRite during his break, and while there "might have bumped into some lady or something," provided powerful circumstantial evidence of identity and illustrated a similar plan and method of committing the robberies. In those ways the crimes were sufficiently connected to deny severance.

Moreover, a trial court's decision may be harmless error where "any prejudice to defendant was not such that created a real possibility that the jury arrived at a result it otherwise might not have reached." State v. Marrero, 148 N.J. 469, 492-93 (1997) (citing State v. Macon, 57 N.J. 325, 336 (1971)). The central inquiry for determining whether harmless error occurred is "whether in all the circumstances there was a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits." Macon, 57 N.J. at 338.

We recognize that Rule 404(b) violations "are poor candidates for rehabilitation under the harmless error" rule because " other-crime evidence has a unique tendency to turn a jury against the defendant." State v. G.V., 162 N.J. 252, 262 (2000) (quoting State v. Simon, 79 N.J. 191, 206 (1979); State v.

Stevens, 115 N.J. 289, 302 (1989)). We nonetheless view any alleged error in denying severance as harmless. The fact that defendant was found not guilty of the Dennuzzo robbery and theft demonstrates that the jury was not turned against the defendant by the other-crime evidence and was not denied a fair trial.

We next address the admission of Site's and Tighelaar's hearsay testimony. First, defendant argues that Sites's testimony about his conversation with Dooley was inadmissible hearsay. The State argues that Sites's testimony, which relates to Dooley's conversation with defendant, is admissible as a statement by a party-opponent, and that it is otherwise plain error and harmless.

"Evidentiary rulings made by the trial court are reviewed under an abuse-of-discretion standard." State v. Scharf, 225 N.J. 547, 572 (2016) (citing Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). On the other hand, evidentiary issues not objected to at trial are subject to the plain error rule; that is, "error possessing a clear capacity to bring about an unjust result and which substantially prejudiced the defendant's fundamental right to have the jury fairly evaluate the merits of his defense." State v. Irving, 114 N.J. 427, 444-45 (1989) (quoting State v. Thornton, 38 N.J. 380, 396 (1962)). Accord R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . .").

A-0341-18

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted" and is inadmissible unless a recognized exception applies. N.J.R.E. 801, 802. A defendant's statement is generally admissible under N.J.R.E. 803(b)(1), the party-opponent exception. However, when the defendant's statement is repeated by the person hearing it to another, who then testifies about the defendant's statement, it is inadmissible double hearsay.

Sites's testimony about his conversation with Dooley has components of inadmissible hearsay. For example, Sites testified that Dooley stated, "what are the odds, it can't be a coincidence." He further testified that Dooley told him who defendant was working for and that the Saab was "a rare car." These statements by defendant's coworker to a police officer are inadmissible hearsay. Importantly, defendant did not object to Site's testimony. We therefore review for plain error.

Notably, Sites's testimony did not include directly incriminating statements defendant made to Dooley other than that defendant said, "he was hard up for money." Moreover, the impact of Sites's hearsay testimony is at least partially vitiated because Dooley himself testified about what he had said to Sites and what defendant had said to Dooley. See State v. Torres, 313 N.J. Super. 129, 158 (App. Div. 1998) (noting "the double hearsay impact of the

16

police testimony is at least partially vitiated because [co-defendant] Gambia himself testified that he had told [State's witness Javier] Garcia what had happened").  Since Dooley's testimony was admissible, Sites's recounting of what Dooley said is harmless error.  See ibid.

Defendant next argues that the court gave an ineffective curative instruction on Tighelaar's inadmissible testimony.  The State argues the court properly instructed the jury to disregard Tighelaar's testimony about his conversation with defendant's wife, and that any error was nonetheless harmless.

When inadmissible evidence is admitted in error, "a curative instruction may sometimes be a sufficient remedy."  State v. Prall, 231 N.J. 567, 586 (2018).  Nevertheless, a proper instruction "must be firm, clear, and accomplished without delay."  State v. Vallejo, 198 N.J. 122, 134 (2009).  The Court in Vallejo emphasized the "importance of immediacy and specificity" of curative instructions to avoid the prejudice of inadmissible evidence "that has seeped into a trial."  Id. at 135.  Here, the curative instruction given by the trial court was not immediate.

Tighelaar testified that Reynolds told him that she had been gone the entire day of October 26, 2014 and that defendant was not feeling well and stayed home.  Tighelaar also recounted that Reynolds told him that she took "the

Hyundai and not the Saab," and that "just she and [defendant] were the only ones who would drive the two vehicles." Defense counsel objected to further questioning based on the conversation being inadmissible hearsay but the court allowed Tighelaar to state, "she had gotten up early in the morning, had gone to the mosque, and she did not return until after 3:30 p.m. that day." This testimony evidenced that the Saab was available to defendant at the time of the Dennuzzo robbery.

The next day, defense counsel asked the court to instruct the jury to disregard Tighelaar's testimony regarding his conversation with Reynolds. The judge agreed and stated that she would "try to mold something" and allow counsel to review it. The judge gave the following curative instruction after the jury had begun deliberating: "What is said by a non-party witness, specifically Ms. Reynolds, is considered inadmissible hearsay and not to be considered during your deliberations." Hence, the jury was instructed to disregard Tighelaar's testimony about what Reynolds told him. "[T]he jury is presumed to follow the trial court's instructions." State v. Burns, 192 N.J. 312, 335 (2007) (citing State v. Nelson, 155 N.J. 487, 526 (1998)). Moreover, any perceived error was harmless since the jury acquitted defendant of the Dennuzzo robbery.

Defendant also argues that cumulative error warrants reversal of his conviction. "[T]he predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007). Given our rulings rejecting defendant's arguments or finding the error harmless, we discern no cumulative error warranting reversal. Defendant's trial was not rendered unfair.

Lastly, we address defendant's argument that the trial court impermissibly double counted by using the same robberies as justification for the persistent offender extended term and applying aggravating factor six. We disagree.

The court properly considered defendant's prior convictions, including his many robbery convictions, when deciding whether to impose a discretionary extended term under N.J.S.A. 2C:44-3(a). Indeed, the court "must examine the defendant's prior record and his or her age at the time of any prior convictions," when "determin[ing] whether a defendant meets the definition of a 'persistent offender.'" State v. Pierce, 188 N.J. 155, 162 (2006).

In turn, determining the length of the extended term "is a function of the court's assessment of the aggravating and mitigating factors, including the consideration of the deterrent need to protect the public." Id. at 168. The court properly considered defendant's prior convictions when deciding whether to

19

apply aggravating factor six and the weight to be given to it. In doing so, the court did not engage in impermissible double counting. As we explained in State v. McDuffie, 450 N.J. Super. 554, 576-77 (App. Div. 2017):

> [Defendant's] criminal history was not a "fact" that was a necessary element of an offense for which he was being sentenced. Further, it cannot be disputed [defendant] had more than the requisite number of offenses to qualify for an extended term. Indeed, the trial judge was not then required to ignore the extent of his criminal history when considering applicable aggravating factors.

Defendants reliance on State v. Vasquez, 374 N.J. Super. 252 (App. Div. 2005), is misplaced. In that case, the trial judge "erred in concluding that [State v. Dunbar, 108 N.J. 80 (1987)], permitted him to raise the presumptive extended base term on account of defendant's only conviction, the very conviction which both allowed and required an extended term. To do so was a form of 'double counting.'" Id. at 267. Here, in contrast, the judge imposed an extended term and applied aggravating factor six based on defendant's numerous prior convictions, not the crime he was being sentenced for.

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014).

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the

20

sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Applying this deferential standard of review, we discern no basis to overturn the sentence imposed. Defendant does not dispute that he was eligible for an extended term. The judge imposed a mid-range extended term. See N.J.S.A. 2C:43-7(a)(3) (setting the extended term range between ten and twenty years for a second-degree crime). The judge followed the sentencing guidelines, her application of the aggravating and mitigating factors is supported by the record, and the sentence does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21